# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

BYRON K. HENSLEY,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:12-cv-653

Barrett, J.
Litkovitz, M.J.

**REPORT AND**
**RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 9), the Commissioner's response in

opposition (Doc. 14), and plaintiff's reply memorandum. (Doc. 15).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in May 2011, alleging disability since August

1, 2007, due to bipolar disorder, manic depression, collapsed right lung, and an endocrine

disorder. (Tr. 262). Plaintiff's applications were denied initially and on reconsideration.

Plaintiff, through counsel, requested and was granted a de novo hearing before administrative

law judge (ALJ) Deborah Smith. Plaintiff and a vocational expert (VE) appeared and testified at

the ALJ hearing held on May 15, 2012. On June 5, 2012, the ALJ issued a decision denying

plaintiff's DIB and SSI applications. (Tr. 9-22). Plaintiff's request for review by the Appeals

Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-

(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the

sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

Prior to filing the DIB and SSI applications presently under consideration, plaintiff filed applications for DIB and SSI in June 2008, alleging disability since February 28, 2007. ALJ Paul Yerian issued a decision on February 18, 2011, finding plaintiff was not disabled within the meaning of the Social Security Act and denying plaintiff's DIB and SSI applications. (Tr. 80-91). Plaintiff's request for review by the Appeals Council was denied and plaintiff did not seek further review of the decision in the district court, making the decision of the ALJ the final decision on those applications.

In rendering her decision on plaintiff's subsequent DIB and SSI applications, ALJ Smith recognized she was bound under principles of administrative res judicata by ALJ Yerian's prior findings, absent new and material evidence or changed circumstances pertaining to plaintiff's residual functional capacity (RFC).[1] (Tr. 9-10, citing Acquiescence Rulings (AR) 98-3(6) and

---

[1] ALJ Yerian determined that plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: he was limited to simple, repetitive tasks; in an environment with no more than brief and superficial contact with others; without team or group settings; and without a rapid work pace. (Tr. 84).

3

98-4(6)[2]).  ALJ Smith imposed additional physical limitations in the RFC finding, restricting plaintiff to light work with no concentrated exposure to dust, gasses and fumes, but she determined there had been no change in plaintiff's mental RFC.  (*Id.* at 15).

The ALJ[3] applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff met] the insured status requirements of the Social Security Act through March 31, 2011.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since August 1, 2007 (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: emphysema, bipolar affective disorder, anxiety disorder-NOS, polysubstance dependence in questionable remission (since [plaintiff] went into the Montgomery House[4] about 6-8 months ago but was using before that time), and a personality disorder-NOS (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work (See Exhibit B10A/7- physical limits[5]) as defined in 20 CFR 404.1567(b) and 416.967(b) except that he is limited to avoiding concentrated exposure to dust, gasses and fumes.  Mentally, he can perform simple, repetitive tasks in an environment with

---

[2] AR 98-3(6) and AR 98-4(6) apply to findings of the demands of a claimant's past relevant work, a claimant's RFC, and other finding required at a step in the sequential evaluation process for determining disability, and state: "When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." *Ferguson v. Astrue*, No. 3:10-0936, 2011 WL 3566366, at ** 11, 12 (M.D. Tenn. Aug. 15, 2011), report and recommendation adopted, 2011 WL 3904120 (M.D. Tenn. Sept. 6, 2011).

[3] From this point forward, ALJ Smith will be referred to as "the ALJ."

[4] The ALJ described the Montgomery House as "transitional, 6-month housing" where plaintiff was required to live with a roommate, clean the bathroom, pick up trash, and abstain from drugs and alcohol. (Tr. 14).

[5] Exhibit B10A/7 is found at Tr. 155.  It is a statement of "Medically Determinable Impairments and Severity" and the beginning portion of an "Assessment of Policy Issues" completed by a state agency reviewing physician on December 14, 2011.

4

no more than brief and superficial contact with others, without team or group settings, and without a rapid work pace.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[6]

7. The [plaintiff] was born [in] . . . 1974 and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[7]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from August 1, 2007, through the date of [the ALJ's] decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-22).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[6] Plaintiff's past relevant work was as an unskilled construction laborer, which was very heavy work, and a semiskilled stocker, which was heavy work. (Tr. 20).

[7] The ALJ found that plaintiff would be able to perform the requirements of unskilled light occupations such as packer (700 regional jobs and 150,000 national jobs) and general factory worker (500 regional jobs and 160,000 national jobs) and unskilled sedentary jobs such as inspector (400 regional jobs and 60,000 national jobs). (Tr. 21).

5

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

Principles of administrative res judicata apply to a decision concerning a claimant's eligibility for social security benefits. *Drummond v. Commissioner of Social Security*, 126 F.3d 837, 841 (6th Cir. 1997); AR 98-3(6), AR 98-4(6). Social security claimants and the Commissioner alike are barred from relitigating issues that have previously been determined. *Drummond*, 126 F.3d at 842. Absent evidence that a claimant's condition has improved, findings issued by an ALJ in a prior disability determination are binding on an ALJ in a

6

subsequent proceeding.  *Id.*  The Commissioner has recognized the binding effect of findings made in a prior adjudication on subsequent adjudicators.  *See* AR 98-3(6), AR 98-4(6).

### D.  Specific Errors

The pertinent medical findings and opinions have been adequately summarized in the parties' briefs and will not be repeated here.  (Doc. 9 at 1-3; Doc. 14 at 2-5).  Where applicable, the Court will identify the medical evidence relevant to its decision.

On appeal, plaintiff argues that: (1) the ALJ erroneously determined that plaintiff's mental RFC had not changed subsequent to ALJ Yerian's prior decision denying disability benefits despite the ALJ's finding that there was "new and material evidence"; (2) the ALJ erred in weighing the opinions of the mental health sources; and (3) the ALJ erred by posing an improper hypothetical to the VE.  (Doc. 9).

### 1.  The ALJ erred in analyzing whether plaintiff's mental RFC remained unchanged subsequent to the prior ALJ decision.

Plaintiff alleges as his first assignment of error that the ALJ erred by finding that despite plaintiff's submission of a "significant amount of materially new evidence for the period following the prior adjudication" (Tr. 10), plaintiff's mental RFC had not changed in any respect subsequent to ALJ Yerian's February 2011 decision.[8]  Plaintiff's first assignment of error is an amalgam of errors that the ALJ allegedly committed in rendering her decision denying disability benefits.  First, plaintiff argues that the ALJ erred by discussing his use of alcohol or drugs as part of the sequential evaluation process.  (Doc. 9 at 7, citing 20 C.F.R. § 404.1535[9]).  Plaintiff

---

[8] Plaintiff does not allege that the ALJ erred in analyzing whether there were any material changes in his physical condition.  Accordingly, the Court has limited its review to plaintiff's mental impairments.

[9] Section 404.1535 governs how the Commissioner determines whether drug addiction or alcoholism is a contributing factor to the disability determination in the context of a claim for DIB.

alleges that the ALJ was required to first go through the five steps of the sequential evaluation and find him disabled before the issue of drug or alcohol use became material.

In addition, plaintiff contends that the ALJ erred by giving the most weight to the state agency reviewing physicians, who reviewed the same evidence that ALJ Yerian had considered and did not review evidence of plaintiff's mental health treatment beginning in March 2011. (Doc. 9 at 4). Plaintiff contends that despite such treatment, he continued to experience psychological symptoms that would preclude him from working 40 hours a week. (*Id.* at 4-5). Plaintiff alleges that the limitations imposed by his treating psychiatrist, Dr. Timothy Jette, M.D. (Tr. 365-70), and the mental RFC assessment completed by his treating psychiatrist, Dr. Sharon Stanford, M.D. (Tr. 461-64), show that he is unable to perform any work.[10] (*Id.*).

Plaintiff further alleges that the ALJ erred in evaluating the record evidence in a number of respects, particularly evidence related to his level of mental functioning. Plaintiff contends that the ALJ parsed the record pertaining to plaintiff's activities of daily living and failed to consider that plaintiff performed those daily activities in a structured environment; that plaintiff still required assistance with his daily activities as of December 2011 (Tr. 459-69); and that those activities did not impose the same demands as a daily job, such as prompt attendance, reliability, and production requirements. (Doc. 9 at 6, citing *Bjornson v. Commissioner*, 671 F.3d 640, 647 (7th Cir. 2012)). Plaintiff also contends that the ALJ erroneously relied on only select portions of the vocational assessment performed by Jewish Vocational Services. (*Id.* at 5, citing Tr. 325-332). Plaintiff further suggests that the ALJ erred by failing to consider the reasons why he may have neglected to take medications, including: side effects of the medication, his inability to afford medications, and whether his failure to take his medication is a symptom of his bipolar

---

[10] Insofar as plaintiff alleges that the ALJ erred in deciding the weight to accord the opinions of the mental health providers, this alleged error is addressed in the second assignment of error.

disorder. (*Id*. at 8, citing SSR 96-7 (1996); *Spiva v. Commissioner*, 628 F.3d 346, 351 (7th Cir. 2010); Tr. 388- 9/19/11 emergency room report stating plaintiff's greatest concern was his inability to get his prescription filled and discussing possible avenues for him to obtain his medications; Tr. 392- 8/9/11 emergency room report noting plaintiff had not taken his medication regularly due to finances). Plaintiff also suggests that the ALJ erroneously took into account his failure to seek mental health treatment from 2009 until March 2011 given that his failure to seek treatment was due to his mental impairments. (Doc. 9 at 5, citing *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).

Plaintiff further contends that the ALJ erred in evaluating the vocational evidence. Plaintiff alleges that his mental impairments cause more work-related limitations than the ALJ found.[11] (Doc. 9 at 9, citing *Ealy v. Commissioner*, 594 F.3d 504, 516-17 (6th Cir. 2010)). Plaintiff further alleges that the moderate limitations imposed by Dr. Stanford, which the ALJ apparently accepted, would preclude him from performing the jobs identified by the VE. (*Id*. at 5-6, citing Tr. 74-75).

Plaintiff argues that in the alternative to finding him disabled, the ALJ was required to consider whether he was entitled to a closed period of disability. (Doc. 9 at 8, citing 20 C.F.R. § 404.1509). The argument framed by plaintiff's counsel is rather convoluted. As best the Court is able to discern, counsel argues that although the ALJ found plaintiff's mental condition had improved by 2012 as a result of his mental health treatment (Tr. 19), the following evidence supports a finding that plaintiff is entitled at a minimum to a closed period of disability: (1) Dr. Stanford's opinion that plaintiff's impairments and restrictions have existed since 2010 (Tr. 464),

---

[11] Insofar as plaintiff alleges that the ALJ erred by failing to incorporate mental limitations into the hypothetical the ALJ posed to the VE (Doc. 9 at 9), the Court will consider these allegations in connection with plaintiff's third assignment of error.

and (2) treatment notes indicating that plaintiff's GAF[12] score between March 2010 and March 2011 was no higher than 55 (Tr. 354). (Doc. 9 at 8).

Upon review of the evidence of record and the ALJ's decision, the Court finds it is apparent that the ALJ erred by considering plaintiff's substance abuse during the sequential evaluation process. Accordingly, the Court will address only this alleged error in connection with plaintiff's first assignment of error. The Commissioner has not addressed this specific error in the response to the Statement of Errors.

The Social Security Act provides that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The implementing regulations specify the sequential evaluation process the ALJ must follow when the issue of substance abuse presents itself. This process requires the ALJ to *first* determine whether a claimant suffers from a disability before proceeding - if necessary - to a determination of whether the substance abuse is a "contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535, 416.935.[13] As the Eighth Circuit explained in a case involving substance abuse:

---

[12] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. The DSM-IV categorizes individuals with scores of 41 to 50 as having "serious" symptoms. *Id.* at 32. Individuals with scores of 51-60 are classified as having "moderate" symptoms. *Id.*

[13] Title 20 C.F.R. §§ 404.1535 and 416.935 set forth the process for determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability:

> (a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

> Only after the ALJ has made an initial determination 1) that [the claimant] is disabled, 2) that drug or alcohol use is a concern, and 3) that substantial evidence on the record shows what limitations would remain in the absence of alcoholism or drug addiction, may he then reach a conclusion on whether [the claimant's] substance use disorders are a contributing factor material to the determination of disability. If this process proves indeterminate, an award of benefits must follow.

*Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003).

Thus, a finding of disability is a condition precedent to the application of § 423(d). "To find that drug addiction [or alcoholism] is a contributing factor material to the determination of disability without first finding the claimant disabled . . . is to put the cart before the horse. . . ." *Williams v. Barnhart*, 338 F. Supp.2d 849, 862 (M.D. Tenn. 2004) (finding legal error where instead of considering the cumulative effect of plaintiff's drug and alcohol addiction and plaintiff's seizure disorder, the ALJ improperly considered claimant's cocaine addiction as detracting from the credibility of her complaints of seizure activity and other symptoms). The ALJ must not factor evidence of substance abuse into the disability determination during the sequential evaluation, but instead:

---

> (b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.
>
> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> > (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
> >
> > (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

11

> The ALJ must base this disability determination on substantial evidence of [the claimant's] medical limitations without deductions for the assumed effects of substance use disorders.  The inquiry here concerns strictly symptoms, not causes, and the rules for how to weigh evidence of symptoms remain well established.  Substance use disorders are simply not among the evidentiary factors our precedents and the regulations identify as probative when an ALJ evaluates a physician's expert opinion in the initial determination of the claimant's disability.
> . . .
> If the gross total of a claimant's limitations, *including* the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent.

*Brueggemann,* 348 F.3d at 694-95 (emphasis added).

Here, the ALJ erred in her evaluation of plaintiff's substance abuse issues in contravention of the Social Security regulations.  The ALJ outlined the proper substance abuse analysis procedure to follow in her decision, stating that if a claimant is found disabled and there is medical evidence of a substance abuse disorder, then the ALJ is required to determine if the disorder was a contributing factor material to the determination of disability by evaluating the extent to which the claimant's mental and physical limitations would remain if the claimant stopped the substance abuse.  (Tr. 12).  The ALJ did not conclude that substance abuse was material to the disability determination; rather, she never found plaintiff to be disabled.  Thus, as the ALJ implicitly acknowledged, the need to assess the materiality of substance abuse never arose.  Yet, for reasons that are not entirely clear, substance abuse repeatedly factored into the ALJ's decisionmaking process at a number of steps in the sequential evaluation process.

Initially, the ALJ never made a clear determination as to whether plaintiff's substance abuse was an ongoing problem.  The ALJ intimated that plaintiff's substance abuse had ceased by finding that the record "consistently showed sobriety" after plaintiff entered the Montgomery House in November 2011.  (Tr. 13, 17).  Nonetheless, the ALJ seemed to question whether

substance abuse was an ongoing problem as the ALJ found plaintiff suffered from
"polysubstance dependence *in questionable remission* (since [plaintiff] went into the
Montgomery House about 6-8 months ago but was using before that time)[.]" (Tr. 13) (emphasis
added). The Court is unable to discern from the ALJ's decision whether the ALJ determined that
drug and alcohol abuse was no longer a concern, or whether the ALJ believed plaintiff had an
ongoing problem with substance abuse.

Irrespective of whether plaintiff had an ongoing problem with drug or alcohol addiction,
the ALJ found ample evidence of substance abuse prior to November 2011, which the ALJ
improperly factored into the disability determination during the sequential evaluation process
when evaluating plaintiff's mental RFC.[14]

The ALJ's decision demonstrates that she improperly considered plaintiff's substance
abuse when assessing the weight to afford the opinions of the mental health sources, rather than
evaluating their opinions without considering the impact of plaintiff's substance abuse before
proceeding to the analysis under §§ 404.1535 and 416.935, if necessary. The ALJ gave "little
weight" to the opinion of plaintiff's treating psychiatrist, Dr. Sharon Stanford, M.D., in part
because the ALJ found Dr. Stanford did not address plaintiff's substance abuse. [15] (Tr. 19). The
ALJ stated:

---

[14] The ALJ found that plaintiff had, at most, a moderate restriction in activities of daily living because
"[w]hile he is not always in the mood to perform daily requirements, he is able to function when he needs to" (Tr.
14); a moderate limitation in social functioning because while there are "some definite antisocial tendencies (per Ms.
[Lindsay] Harper), he currently lives with a roommate, without incident, he has a friend with who [sic] he visits
regularly, and the more recent treatment records note that he is getting along better with his family"; (Tr. 14-15); a
moderate limitation in concentration, persistence or pace based on plaintiff's "admitted ability to manage personal
finances"; (Tr. 15); and no episodes of decompensation of extended duration. (*Id.*). The ALJ stated these findings
were consistent with the September 17, 2011 opinion of the state agency reviewer, Dr. Mel Zwissler, Ph.D., as to
whether the "B" and "C" criteria were met. (*Id.*).

[15] Contrary to the ALJ's representation, Dr. Stanford actually certified she was rating plaintiff's
capabilities "independent of any impairment from alcoholism and/or drug addiction." (Tr. 464).

13

> Also, the records cover the time since 2010, during which polysubstance abuse was active, and Dr. Stanford's report *does not address how this abuse impacted the claimant's ability to function.* In addition, she does not address the issue of noncompliance and the claimant's ability to function when on medications as opposed to when he does not take his medication *and continues to abuse substances.*

(*Id.*) (emphasis added). The ALJ erred by discounting Dr. Stanford's opinion on this basis as part of the sequential evaluation process rather than weighing her opinion independent of substance abuse considerations. *See Gayheart*, 710 F.3d at 380-81 (alcohol abuse is not a factor to be considered in determining the weight to give a treating source opinion) (citing 20 C.F.R. § 404.1527(c)).

Similarly, the ALJ gave "little weight" to the findings of Dr. Timothy Jette, M.D., a treating psychiatrist at Centerpoint, in part because although Dr. Jette noted alcoholism and marijuana abuse in partial remission, he did not "comment on the effect of these substances or [plaintiff's] compliance." (Tr. 19). The ALJ likewise discounted the opinion of the consultative examiner, Dr. Ralph L. Huller, Jr., M.D., because Dr. Huller appeared to be "unaware of any substance abuse and how that impacted [plaintiff's] physical and mental health." (*Id.*, citing Tr 418-26).

In addition, the ALJ gave "little weight" to the testimony of plaintiff's case manager at Centerpoint, Ms. Lindsay Harper, based in part on considerations related to plaintiff's substance abuse. (*See* Tr. 60-67). The ALJ found that Ms. Harper "appears to be unaware of [plaintiff's] substance abuse as she testified that she was not aware of any since she began seeing [plaintiff] in September 2011, but her report indicates substance abuse until November 3, 2011." (Tr. 20). The ALJ also found that Ms. Harper completed her report after knowing plaintiff for only a few months and, furthermore, "two of those months, [plaintiff] was actively abusing substances even

14

though she said at the hearing that she was not aware of any substance abuse since September 2011. Other records from CenterPoint show that [plaintiff's] condition improved when he began to take his medications properly and when he stopped doing drugs[.]" (Tr. 20, citing Tr. 465-74). The ALJ erred to the extent she discounted Ms. Harper's opinion based on the case manager's failure to specifically assess the impact of plaintiff's substance abuse on his level of functioning.

Further, the ALJ erred by factoring out the assumed effects of plaintiff's substance abuse when adopting the opinions of the state agency reviewing psychologists, Drs. Mel Zwissler, Ph.D. and Vicki Warren, Ph.D., and incorporating the limitations found by these sources in the RFC assessment. (Tr. 18-19, citing Tr. 103-118, 119-134, 137-47, 149-59). The ALJ gave "great weight" to these assessments, which adopted ALJ Yerian's mental RFC, on the sole ground that "the record since Judge Yerian's decision does not demonstrate any significant changes in the severity of the impairments, and, in fact, shows improvement since November 2011 when [plaintiff] entered Montgomery House, when he began to take his medication properly and abstained from drugs/alcohol." (Tr. 18-19). The ALJ thereby adopted the opinions of the state agency reviewing psychologists based in part on improvement in plaintiff's condition which the ALJ attributed to plaintiff's abstinence from drugs and alcohol. Although the ALJ was not precluded from considering improvement during the period of abstinence to determine whether substance abuse was material to the disability finding, *Monateri v. Commissioner of Social Security*, 436 F. App'x 434, 443 (6th Cir. 2011), it was error for the ALJ to factor out the effects of substance abuse during the sequential evaluation process.

In short, the ALJ erred by deducting the assumed effects of plaintiff's substance abuse in her disability determination, when she should have considered whether plaintiff was disabled in the first instance based on all of the evidence of record, including the symptoms arising from plaintiff's substance abuse. 20 C.F.R. §§ 404.1535, 416.935; *Brueggemann*, 348 F.3d at 694-95. The ALJ improperly considered plaintiff's substance abuse in discounting the opinions of plaintiff's treating sources and the consultative examining physician, and she accepted the assessments of the state agency reviewing psychologists based in part on subsequent improvement in plaintiff's medical condition that the ALJ attributed to plaintiff's discontinued use of alcohol and drugs. Although the ALJ was entitled to take into account any improvement in plaintiff's mental condition that may have occurred once plaintiff was no longer abusing drugs and substances, the controlling regulations mandate that the ALJ make this assessment only following a disability determination. Because the ALJ failed to follow the controlling regulations, the Court is unable to discern from the instant record the degree to which plaintiff's functional limitations have been impacted by his mental impairments, as opposed to any substance abuse. Thus, plaintiff's first assignment of error should be sustained based on the ALJ's failure to conduct a proper analysis under 20 C.F.R. §§ 404.1535 and 416.935.

## 2. The ALJ erred in weighing the opinions of the mental health providers.

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 529-530 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial

deference, and if the opinions are uncontradicted, complete deference."). Likewise, a treating physician's opinion is entitled to substantially greater weight than the contrary opinion of a non-examining medical advisor. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)-(6)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citing former 20 C.F.R. §404.1527(d)(2)[16]). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific

---

[16] Title 20 C.F.R. § 404.1527 was amended effective March 26, 2012. The provisions governing the weight to be afforded a medical opinion that were previously found at §§ 404.1527(d), 416.927(d) are now found at §§ 404.1527(c), 416.927(c).

17

to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (citing SSR 96-2p).

Plaintiff contends that the ALJ failed to comply with applicable Social Security regulations and case law when she did not give controlling weight to the assessments of plaintiff's treating psychiatrists, Drs. Jette and Stanford, and instead gave "great weight" to the assessments of the non-examining state agency reviewing psychologists, Drs. Zwissler and Warren. (Doc. 9 at 9-11). Plaintiff contends that the ALJ did not give "good reasons" for declining to give controlling weight to the opinions of Drs. Jette and Stanford. Plaintiff argues that the ALJ's reasons for rejecting the treating psychiatrists' opinions were not valid because the psychiatrists were both aware of "non-compliance" and drug/alcohol use; the restrictions imposed by Dr. Jette were not vague as found by the ALJ; and the moderate restrictions imposed by Dr. Stanford, which the ALJ apparently adopted, would require more breaks than permitted with the unskilled jobs identified by the VE. (*Id.* at 11). Plaintiff also contends that the ALJ erred by failing to give "significant weight" to the testimony of his case manager, Ms. Harper, which was consistent with the medical records. (Doc. 9 at 11). Plaintiff argues that the ALJ could not reasonably rely on the September and December 2011 opinions of the state agency reviewing psychologists because those opinions were based on a stale and incomplete record. (*Id.* at 9-10, citing SSR 96-6p; *Blakley*, 581 F.3d 399).

Dr. Stanford completed a mental RFC assessment on December 27, 2011. (Tr. 462-64). She opined that plaintiff was moderately limited in his ability to remember worklike procedures; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others without being unduly

18

distracted by them; make simple work-related decisions; ask simple questions or request

assistance; and respond appropriately in a routine work setting. (Tr. 462-63). Dr. Stanford

opined that plaintiff was markedly limited in his ability to maintain concentration and attention

for extended periods of 2-hour segments; to sustain an ordinary routine without special

supervision; to complete a normal workday and workweek without interruptions from

psychologically based symptoms and perform at a consistent pace without an unreasonable

number and length of rest periods; to accept instructions and respond appropriately to criticism

from supervisors; and to get along with co-workers or peers without unduly distracting them or

exhibiting behavioral variances. (*Id.*). As the basis for her assessment, Dr. Stanford explained

that plaintiff had difficulty with mood swings, irritability, and depression, which impaired his

ability to carry out tasks and get along with others. (Tr. 464). She indicated that plaintiff had

been treated for his condition since 2010 and that his condition and restrictions had persisted

since that time. (*Id.*).

The ALJ determined Dr. Stanford was a treating physician, but the ALJ decided to give

her opinion "little weight" because it was unsupported. The ALJ found that: (1) although Dr.

Stanford reported treating plaintiff since 2010, the record did not include evidence of such

treatment, she did not report the extent of treatment, and she did not state how many times she

interacted with plaintiff; (2) she did not provide any explanation for the limitations she imposed;

(3) she did not address how plaintiff's polysubstance abuse impacted his ability to function; (4)

she did not address plaintiff's ability to function while on medication as opposed to his ability to

function when he is not taking his medication and is abusing substances; and (5) her report,

which is dated December 2011, did not address recent Centerpoint records showing that plaintiff's condition improved when he received proper treatment. (Tr. 19).

The ALJ erred in determining the weight to give the opinion of plaintiff's treating psychiatrist, Dr. Stanford. First, as explained in connection with plaintiff's first assignment of error, the ALJ improperly took into consideration during the sequential evaluation process the treating psychiatrist's failure to discuss the impact of plaintiff's substance abuse and to compare his mental limitations during the time period plaintiff was abusing substances as opposed to when he was not.

In addition, the ALJ erred by failing to give Dr. Stanford's opinion controlling weight because substantial evidence does not support a finding that Dr. Stanford's mental RFC assessment is (1) unsupported by her clinical findings and diagnoses, and (2) inconsistent with "the other substantial evidence in [the] case record." *See Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)). *See also* 20 C.F.R. § 416.927(c)(2). Dr. Stanford was a treating psychiatrist who rendered her assessment after seeing plaintiff six times over a five-month period for medical management of his mental health. (Tr. 443-44, 447-48, 449-50, 451-52, 453-54, 470-71). Dr. Stanford explained in her assessment that plaintiff's ability to carry out tasks and get along with others was impaired by mood swings, irritability and depression. (Tr. 464). Dr. Stanford's assessment appears to be consistent with the other medical evidence of record, including the September 2011 assessment of the consultative examining physician, Dr. Huller (Tr. 418-24), who diagnosed plaintiff with bipolar disorder with chronic depression and opined that plaintiff's "primary problem . . . is his psychiatric disease with major depression and panic

20

disorder which is severely limiting [] his ability to perform any type of structured work in an environment where he must deal with others."[17]  (Tr. 420).

Dr. Stanford's assessment is also consistent with the opinion of the only other treating psychiatrist of record, Dr. Jette. Dr. Jette completed a "Daily Activities Questionnaire" on June 13, 2011. (Tr. 367-371). He listed plaintiff's diagnoses as panic disorder and paranoia. (Tr. 367). Dr. Jette indicated that he had treated plaintiff weekly from April 20, 2011 to June 8, 2011. (Tr. 370). He opined that plaintiff's ability to remember, understand and follow directions was "limited"; his ability to maintain concentration was "limited"; his ability to sustain concentration, persist at tasks, and complete tasks in a timely fashion was "very limited"; and his social interaction was "limited by symptoms." (Tr. 367). Dr. Jette described plaintiff as "easily stressed; paranoid," and Dr. Jette opined that plaintiff's ability to react to pressures in the work setting and to be involved in simple and routine or repetitive tasks was "very poor at present time." (*Id.*). Dr. Jette indicated that paranoia, mania and difficulty with people were conditions that would prevent work activities. (Tr. 369).

Dr. Stanford's opinion was also consistent with the testimony of plaintiff's case manager, Ms. Harper, and with her description of plaintiff's level of functioning. The ALJ was not bound to accept Ms. Harper's assessment of plaintiff's functional limitations given that she was not an acceptable medical source under the Social Security regulations. [18]  *See* 20 C.F.R. §§

---

[17] The ALJ gave Dr. Huller's assessment of plaintiff's mental limitations "little weight" because she found that Dr. Huller, who performed a physical examination, was not qualified to comment on plaintiff's mental health; his comment that plaintiff was "severely limited" did not impose a specific functional limitation; and it appeared Dr. Huller was unaware of any substance abuse and how that impacted plaintiff's physical and mental health. (Tr. 19).

[18] The ALJ decided to give "little weight" to the "Daily Activities Questionnaire" completed by Ms. Harper on December 12, 2011. (Tr. 20). The ALJ determined that Ms. Harper had been unaware of plaintiff's substance abuse since first seeing him in September 2011; it appears she took his statements at face value even though many of them were inconsistent with the record, especially those records pertaining to his substance abuse (*Id.*, citing Tr. 459); she completed her report after knowing plaintiff for only a few months; during two of those months plaintiff was actively abusing substances, although Ms. Harper said at the hearing she was unaware of any

404.1513(d)(3), 416.913(d)(3) (public and private social welfare agency personnel are considered to be "other sources" rather than "acceptable medical sources"). However, the regulations recognize that information provided by "other sources" may be based on special knowledge of the claimant and may provide insight into the severity of the claimant's impairments and how those impairments impact the individual's ability to function. *See* SSR 06-03p, 2006 WL 2329939, at *2. Despite the fact that Ms. Harper saw plaintiff two to three times a week beginning in September 2011 (Tr. 66), the ALJ did not consider whether Ms. Harper's observations and opinions as to his level of functioning were consistent with the restrictions imposed by Dr. Stanford. However, a review of Ms. Harper's testimony and the "Daily Activities Questionnaire" she completed in December 2011 (Tr. 459-60), shows that the information provided by Ms. Harper is consistent with and supports the restrictions imposed by Dr. Stanford. Ms. Harper testified at the ALJ hearing that even while on his medications, plaintiff becomes very stressed while working, his mood fluctuates, his anxiety increases, he gets paranoid around other people, and he does not take criticism very well. (Tr. 61). She testified that plaintiff could live on his own if he had a payee and that Centerpoint would help monitor the condition of his residence. (Tr. 63). In the Daily Activities Questionnaire she completed, Ms. Harper reported that plaintiff was homeless and that his inability to budget money, "horrible ADL's even with assistance," and his severe major depressive disorder symptoms prevented plaintiff from living independently. (Tr. 459). She further reported that plaintiff's mood swings precluded him from having stable interactions, and his poor judgment and impulsivity also

---

substance abuse since September 2011; records from Centerpoint show that plaintiff's condition improved when he began to take his medications properly and stopped abusing drugs (Tr. 20, citing Tr. 465-74); and Ms. Harper considered plaintiff's physical impairments in the report she completed, a matter on which she was not qualified to comment. (Tr. 20).

affected his daily interactions. (*Id.*). She opined that his unstable emotions, high need for rest, lung problems, and poor tolerance for working with people might prevent him from working. (*Id.*). She reported that plaintiff was able to cook only with a microwave; he could dress himself but needed reminders to shower; he was unable to go to the store due to social anxiety and severe mood swings and only went to the store with the case manager; he was capable of taking public transportation but had severe anxiety; he could manage money but his family often helped; his only activity was watching television; and he frequently had mood swings and was noncompliant with his medications when his mental health symptoms were severe. (Tr. 460).

While the ALJ was not required to accept Ms. Harper's assessment of plaintiff's physical limitations or her report of plaintiff's subjective complaints, the ALJ should have considered whether the mental health issues and limitations noted by Ms. Harper were consistent with the limitations found by plaintiff's treating psychiatrists. A review of her testimony and the other evidence of record does not disclose that Dr. Stanford's opinion was inconsistent with "the other substantial evidence in [the] case record." *See Gayheart,* 710 F.3d at 376. Thus, the ALJ's decision to give less than controlling weight to Dr. Stanford's opinion does not find substantial support in the record.

Further, assuming Dr. Stanford's report is not entitled to controlling weight, substantial evidence does not support the ALJ's decision to give greater weight to the assessments of the state agency reviewing psychologists than to the assessment of Dr. Stanford. As the Sixth Circuit explained in *Gayheart*: "To be sure, a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians." *Gayheart*, 710 F.3d at 376 (citing Soc. Sec. Rul. No. 96-6p, 1996 WL

23

374180, at *3). "In appropriate circumstances, opinions from State agency . . . psychological consultants and other program . . . psychologists may be entitled to greater weight than the opinions of treating or examining sources. For example, the opinion of a State agency . . . psychological consultant or other program . . . psychologist may be entitled to greater weight than a treating source's medical opinion if the State agency . . . psychological consultant's opinion *is based on a review of a complete case record* that includes a medical report from a specialist in the individual's particular impairment *which provides more detailed and comprehensive information than what was available to the individual's treating source.*" *Id.* (emphasis added). Here, however, the ALJ adopted the opinions of the state agency reviewing psychologists with virtually no analysis and based on their review of only a small portion of the record. State agency psychologist Dr. Zwissler issued his assessment in September 2011 and Dr. Warren issued her assessment in December 2011. The ALJ adopted their assessments because she determined that the entire record, including the evidence subsequent to their assessments, showed no significant change in the severity of plaintiff's impairments and, in fact, showed improvement since November 2011 when plaintiff entered Montgomery House and began to take his medication and abstain from alcohol and drugs. (Tr. 18-19). This was error for several reasons.

First, as explained in connection with the first assignment of error, the ALJ erroneously took plaintiff's substance abuse into consideration in evaluating the weight to afford these psychologists' assessments. In addition, the ALJ gave the reviewing psychologists' opinions "great weight" despite the fact that they had only a small portion of the record available for their review. *See* Soc. Sec. Rul. No. 96-6p, 1996 WL 374180, at *3. Their assessments indicate that

24

the psychologists had Dr. Jette's treatment notes and opinion before them, but they did not have the benefit of Dr. Stanford's notes and assessment or the Daily Activities Questionnaire completed by Ms. Harper. (Tr. 103-134; 137-47; 149-59). Yet, the ALJ did not comment on the fact that their review was limited to a portion of the record. To the contrary, the ALJ discounted only the opinion of the treating psychiatrist, Dr. Stanford, for failing to address records that post-dated her assessment and which purportedly showed that plaintiff's condition improved with proper treatment and the discontinuation of drug and alcohol abuse. (Tr. 19).

Moreover, the ALJ applied much greater scrutiny to the assessment of Dr. Stanford, a treating psychiatrist, than he gave to the opinions of the reviewing psychologists. The ALJ generally stated that the record supported the state agency psychologists' findings that there had been no significant change in the severity of plaintiff's mental impairments since the prior ALJ decision, and that in fact the record showed improvement after November 2011. (Tr. 18). However, the ALJ made no findings and cited no evidence to show that the assessments of the reviewing psychologists were supported by the record. This was error as the regulations prohibit the application of greater scrutiny to a treating source opinion as a means to justify giving such an opinion little weight and instead call for just the opposite. *Gayheart*, 710 F.3d at 376.

In sum, the ALJ erred in determining whether the opinion of Dr. Stanford was entitled to controlling weight and in determining the weight to give her opinion. In deciding to give "great weight" instead to the assessments of the state agency reviewing psychologists, the ALJ stated only generally that he was relying on the evidence of record. The ALJ failed to weigh the regulatory factors, including the medical specialty of the sources, how well-supported by evidence their opinions were, how consistent their opinions were with the record as a whole, and

other factors which tended to support or contradict their opinions. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376. To the extent subsequent evidence may have shown improvement in plaintiff's mental condition such that Dr. Stanford's opinion no longer reflected plaintiff's current mental status, the ALJ should have obtained updated medical opinion evidence. *See, e.g.*, 20 C.F.R. §§ 404.1519a(b)(4), 416.919a(b)(4) (consultative examination might be required when "[t]here is an indication of a change in [the claimant's] condition that is likely to affect [the claimant's] ability to work, but the current severity of [the claimant's] impairment is not established.").

Moreover, the ALJ erred in evaluating the opinion of the only other treating psychiatrist of record, Dr. Jette. The ALJ decided to give Dr. Jette's opinion "little weight" because the ALJ determined Dr. Jette imposed only "vague restrictions" that did not assist the ALJ in developing an RFC rather than specific functional limitations; Dr. Jette's notes were replete with "equivocal and recurrent 'unclear' findings" which indicated a lack of familiarity with plaintiff's condition and situation; Dr. Jette did not comment on the effects of plaintiff's substance abuse or his "compliance"; and it appeared Dr. Jette saw plaintiff for only a few short months between March and June 2011. (Tr. 19). Even if the ALJ's reasons for discounting the opinion of Dr. Jette were otherwise supported, the ALJ erred in discounting Dr. Jette's opinion for the reasons explained in connection with plaintiff's first assignment of error. That is, the ALJ improperly took into consideration during the sequential evaluation Dr. Jette's failure to discuss the impact of plaintiff's substance abuse and to compare plaintiff's mental limitations during the time period plaintiff was abusing substances as opposed to when he was not.

For these reasons, plaintiff's second assignment of error should be sustained.

**3. The ALJ erred by failing to account for all of plaintiff's mental limitations in the hypothetical posed to the VE.**

Plaintiff alleges as his third assignment of error that the ALJ erred at step five of the sequential evaluation by failing to account for all of plaintiff's mental limitations in the hypothetical propounded to the VE. (Doc. 9 at 12). Plaintiff asserts that the ALJ failed to account for: (1) his need for extra breaks and excessive absences from the job; (2) the "moderate" limitations imposed by Dr. Stanford, which plaintiff alleges the ALJ apparently credited; and (3) limitations imposed by Dr. Jette related to reliability, the ability to complete tasks, and the ability to maintain attention on the job. Plaintiff alleges that these limitations would preclude him from performing sustained work activity. (Doc. 9 at 12, citing Tr. 75-76). The Commissioner argues that the ALJ accounted for the limitations supported by the medical record in the hypothetical posed to the VE. (Doc. 14 at 16).

At the hearing, the ALJ propounded a hypothetical to the VE that assumed an individual with the following mental limitations: the ability to perform "simple repetitive tasks in an environment with no more than brief and superficial contact with others, not a team or group setting and without a rapid work pace. . . ." (Tr. 69-70). The hypothetical was based on the mental RFC formulated by ALJ Yerian and the medical assessments of the state agency reviewing psychologists, Drs. Warren and Zwissler, each of whom adopted ALJ Yerian's findings. (Tr. 18). The VE found that the hypothetical individual with these mental limitations and plaintiff's physical restrictions would be able to perform representative unskilled jobs such as light factory worker, light packer and sedentary inspector, with 1,600 such jobs in the region and 370,000 such jobs in the national economy. (Tr. 71-72). In response to questioning by counsel, the VE testified that the hypothetical individual performing these jobs could likely miss

27

one day of work per month and would be allowed two short breaks during the workday and a longer midday lunch break. (Tr. 74). The VE testified that the individual would need to be reliable, work consistently, be productive, focus to some extent, and pay attention. (Tr. 75-76).

A VE's testimony does not constitute substantial evidence if the hypothetical does not adequately describe the claimant's physical and mental limitations. *Lancaster v. Commissioner of Social Sec.*, 228 F. App'x 563, 573 (6th Cir. 2007). *See also Renn v. Commissioner of Social Sec.*, No. 1:09-cv-319, 2010 WL 3365944, at *6 (S.D. Ohio Aug. 24, 2010) (Beckwith, S.J.). Here, to the extent the ALJ omitted from the hypothetical the need for extra breaks and absences from work of more than one day per month, the Court finds no error. Plaintiff has not shown that either Dr. Stanford or any other medical source imposed these functional limitations. Nor has plaintiff shown that the ALJ failed to otherwise account for the "moderate" functional limitations imposed by Dr. Stanford. However, to the extent the ALJ's RFC assessment improperly disregarded the "marked" limitations imposed by Dr. Stanford, the hypothetical presented to the VE may not accurately reflect plaintiff's mental impairments and/or limitations. *See* Tr. 73 (VE testified that "marked" limitations imposed by Dr. Stanford would be work preclusive based on impact on plaintiff's reliability and demands of competitive employment); *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009) (ALJ erred in relying on answer to hypothetical question because it simply restated residual functional capacity which did not accurately portray claimant's impairments). Accordingly, additional vocational testimony to account for these limitations may be required on remand.

**4. This matter should be reversed and remanded.**

Remand is appropriate if the Commissioner applied an erroneous principle of law or failed to consider certain evidence. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id. See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176.

Reversal and remand of the ALJ's decision of this case is warranted for the reasons set forth above. This matter should be remanded for further development of the record under 42 U.S.C. § 405(g) on the issue of whether substance abuse is a contributing factor material to the determination of plaintiff's disability and, if so, for a determination of what limitations would remain in the absence of plaintiff's substance abuse. *See Brueggemann*, 348 F.3d at 695. On remand, the ALJ should re-weigh the medical opinions of record and obtain additional medical testimony and vocational evidence as warranted.

**IT IS THEREFORE RECOMMENDED THAT**:

The decision of the Commissioner be **REVERSED** and **REMANDED**.

Date: 8/15/13

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BYRON K. HENSLEY,                           Case No. 1:12-cv-653
    Plaintiff,                              Barrett, J.
                                            Litkovitz, M.J.
    vs.

COMMISSIONER OF                             **REPORT AND**
SOCIAL SECURITY,                            **RECOMMENDATION**
    Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).